UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., A COMPANY OF THE UNITED KINGDOM,<br><br>Plaintiff,<br><br>v.<br><br>ZOETOP BUSINESS CO., LIMITED D/B/A SHEIN, A HONG KONG CORPORATION,<br><br>Defendant. | Case No. 24-cv-08437-SI<br><br>**ORDER RE: MOTION TO DISMISS OR MOTION FOR A MORE DEFINITE STATEMENT AND ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 11, 36, 37, 42 |

This litigation is the sequel to a prior lawsuit filed in this Court and subsequently settled. Plaintiff AirWair International Ltd. brings claims that defendant Zoetop Business Co., Ltd., operating under the trade name Shein, breached their prior settlement agreement and continues to infringe on plaintiff's intellectual property rights. Pursuant to Civil Local Rule 7-1(b), the Court determined that the motion is suitable for resolution without oral argument, and VACATED the May 2, 2025 hearing. For the reasons stated below, the Court GRANTS in part and DENIES in part defendant's motion to dismiss or seek a more definite statement.

**BACKGROUND**

Plaintiff designs, makes, and sells the Dr. Martens brand of footwear. Dkt. No. 27 (First Amended Complaint ("FAC")) ¶ 1. In 2020, plaintiff sued defendant over forty-five products that allegedly infringed plaintiff's trade dress. *Id.* ¶ 2; *Airwair Int'l Ltd. v. Zoetop Bus. Co.*, Case No. 3:20-cv-07696-SI (N.D. Cal.). The two parties ultimately entered into a settlement agreement, effective January 19, 2022, to resolve the claims between them. FAC ¶ 2.

The terms of the settlement agreement looked backwards and forwards. Defendant acknowledged the validity of certain trademark registrations by plaintiff. Dkt. No. 11-3 (Settlement Agreement) ¶ 1. Defendant likewise agreed to stop selling the allegedly infringing products and paid plaintiff a lump sum. *Id.* ¶¶ 2, 5. For its part, plaintiff released all claims against defendant through the effective date of the agreement, but not any claims arising after that date. *Id.* ¶ 9. Regarding the parties' future conduct, defendant agreed to stop making and selling new products that would illegally infringe on plaintiff's trademarks or trade dress and the parties established an out-of-court process to "cure" any future infringements, including damages payments from defendant to plaintiff. *Id.* ¶¶ 6, 11.

Plaintiff now returns to the Court alleging that defendant has been "an unrepentant infringer." FAC ¶ 3. Plaintiff sent breach notices to defendant in 2022 and 2023. *Id.* Plaintiff sent additional notices on October 25, 2024, November 25, 2024, and January 14, 2025. *Id.* ¶¶ 4-5, 40-49. Plaintiff identified a total of sixty-one allegedly infringing products in these last three notices, of which defendant "cured" twenty-eight under the terms of the settlement agreement. *Id.* ¶¶ 40-49, Ex. 7.

Plaintiff asserts defendant has infringed upon its registered trademarks and two distinctive trade dresses related to its footwear designs. The "AirWair Classic Trade Dress" is the "iconic Dr. Martens 1460 boot" released in 1960 and combines seven different features. FAC ¶¶ 18-19. The "Jadon Trade Dress," seen on a newer style released in 2013, combines six different features. *Id.* ¶¶ 21-22. The complaint also lists twelve registered trademarks or trade dress marks, nine of which were referenced in the previous settlement agreement and three of which were registered in 2023 after the settlement agreement. *Id.* ¶ 23; Settlement Agreement ¶ 6. These marks concern various design elements on plaintiff's footwear or combinations thereof, including a yellow welt stitch, a two-toned sole edge, the design of the undersole, a heel tab with yellow and black lettering, and AirWair's logo. FAC ¶ 23. Finally, the complaint details that on December 10, 2024 plaintiff secured a patent for the "ornamental design for a shoe sole" that is used on a variety of its footwear. *Id.* ¶ 32.

Plaintiff contends that Dr. Martens footwear is "famous worldwide," "widely recognized

and extremely popular," and featured prominently in popular culture. FAC ¶¶ 15-16. Plaintiff alleges it has sold "millions of pairs of shoes, boots, and sandals" in the United States over the past forty years. *Id.* ¶ 16. Plaintiff further notes that a 2021 jury verdict against a different retailer found certain of plaintiff's trade dress and registered trademarks were "valid" and "famous."[1] *Id.* ¶ 30.

The FAC asserts nine causes of action: breach of contract (count one); breach of implied covenant of good faith and fair dealing (count two); federal claims based on trademark infringement, false designation of origin, trademark dilution, and patent infringement (counts three through six); California statutory unfair competition and common law unfair competition (counts seven and eight); and trademark dilution under California law (count nine). Defendant timely filed a motion to dismiss or, in the alternative, a motion for a more definite pleading. Dkt. No. 37 ("Mot."). Defendant's motion does not challenge any part of the breach of contract or patent infringement causes of action (counts one and six).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations

---

[1] The jury's findings concerned three registered trademarks and the Jadon Trade Dress. *Airwair Int'l Ltd. v. ITX USA, LLC*, No. 3:19-cv-07641-SI (N.D. Cal.), Dkt. No. 183. While the jury found that defendant had infringed on AirWair's intellectual property, it awarded $0 in damages. *Id.*

3

1    that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*
2    *Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation
3    marks omitted).
4        Rule 12 also allows a party to ask for a more definite statement from the other side when a
5    pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R.
6    Civ. P. 12(e). When evaluating Rule 12(e) motions, courts consider whether the allegations are
7    specific enough to provide a defendant "sufficient notice" to form a response. *See Swierkiewicz v.*
8    *Sorema N. A.*, 534 U.S. 506, 514 (2002); *Harrell v. Bd. of Trustees of California State Univ.*, 710
9    F. Supp. 3d 742, 746 (N.D. Cal. 2024) (citing *Federal Sav. & Loan Ins. Corp. v. Musacchio*, 695 F.
10   Supp. 1053, 1060 (N.D. Cal. 1988)). "'Motions for a more definite statement are viewed with
11   disfavor, and are rarely granted.'" *Harrell*, 710 F. Supp. 3d at 746 (quoting *Cellars v. Pacific Coast*
12   *Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999)).
13       If the Court dismisses the complaint, it must then decide whether to grant leave to amend.
14   The Ninth Circuit has "repeatedly held that a district court should grant leave to amend . . . unless it
15   determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*
16   *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendant's motion to dismiss raises four separate arguments.

## I.  The "Cured SKUs" and Double Redress

Plaintiff does not include the twenty-eight "cured SKUs"[2] (i.e. the cured products) in its breach of contract claim. FAC ¶ 65. However, under its other claims, plaintiff makes no distinction between the cured and uncured products at issue and therefore bases these claims in part on the cured products. Since defendant has provided plaintiff with monetary redress for the cured products, defendant argues that plaintiff can only base its other claims for relief on the uncured products. Mot.

---

[2] "SKU" stands for "stock-keeping unit," which is a unique product identifier.

4

at 7-9. Defendant relies on the doctrine of election of remedies, which in California law is closely related to the doctrine of estoppel. *See Cardenas v. Whittemore*, No. 13CV1720-LAB KSC, 2014 WL 4546059, at *3 (S.D. Cal. Sept. 12, 2014) (citing *Commercial Centre Realty Co. v. Superior Court*, 59 P.2d 978, 982 (Cal. 1936)); *Perkins v. Benguet Consol. Min. Co.*, 132 P.2d 70, 93 (Cal. Ct. App. 1942).

The Court agrees that plaintiff has elected and received a remedy in relation to the cured products and cannot base its non-contract claims on those products. In paragraph eleven of the settlement agreement, the parties agreed to an out-of-court resolution process for future infringement by defendant, including payments from defendant to plaintiff to "cure" infringing products. Dkt. No. 11-3 ¶ 11. Presumably, since plaintiff asserts that defendant cured twenty-eight products, FAC ¶ 49, plaintiff has already received monetary payments for those cured products.

Plaintiff makes two unpersuasive arguments in support of its position. First, plaintiff asserts that the election of remedies is inapplicable at the pleading stage, where parties are allowed to propose multiple, inconsistent remedies. Dkt. No. 41 ("Opp'n") at 7. Plaintiff overlooks that the parties' extrajudicial resolution process has already finished. Second, plaintiff argues that, in the settlement agreement, plaintiff only released defendant from claims through the effective date of the agreement. *Id.* In other words, plaintiff argues that the agreement as written gives it the right to receive curing payments from defendant and yet still pursue any claims based on the cured products except breach of contract. If that was the parties' understanding of the curing provisions, there would be very little incentive for defendant to ever participate in the curing process. Rather, once accepting defendant's efforts to cure, plaintiff is estopped from using those cured products to support any other claims.

The Court thus GRANTS defendant's motion to dismiss any claims to the extent they are based on the twenty-eight "cured SKUs."

## II.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count 2)

Defendant argues that plaintiff's claim for breach of implied covenant of good faith and fair dealing should be dismissed as duplicative of the breach of contract claim.

5

1    In contract law, the implied covenant of good faith and fair dealing "imposes upon each
2 party the obligation to do everything that the contract presupposes they will do to accomplish its
3 purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 398 (Ct. App. 1990)
4 (internal quotation marks and citation omitted). "In short, it is an implied-in-law term of the
5 contract." *Id.* at 399. A claim that the implied covenant was breached

> must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.

*Id.* at 399-400. Outside of the insurance context, the implied covenant is an action that can only be brought in contract, not in tort. *See id.* at 404.

The circumstances in which such a cause of action is appropriate are limited. An implied covenant cause of action is superfluous to a breach of contract action when it "seeks simply to invoke terms to which the parties did agree." *Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1112 (Cal. 2000) (emphasis removed). And an implied covenant cause of action is invalid when it seeks to "impose substantive terms and conditions beyond those to which the contract parties actually agreed." *Id.* at 1110, 1112. "The central teaching of *Guz* is that in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract." *Lamke v. Sunstate Equip. Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

One federal district court categorized the limited pathways to a successful claim for breach of this implied covenant as follows: "(1) where a breach of a consensual contract claim is not alleged; (2) where the plaintiff is seeking recovery in tort; and (3) where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits." *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citations omitted). The first category does not apply in this case. Neither does the second, as California courts have limited tort remedies to cases involving a "special relationship" between the parties, primarily insurance contracts. *See Careau*,

272 Cal. Rptr. at 404. Rather, plaintiff argues here that defendant has acted in bad faith after entering into the Settlement Agreement, "never intend[ing] to comply" with its terms. Opp'n at 10.

In *Celador*, the court allowed an implied covenant claim to proceed due to allegations of bad faith conduct by the defendant. 347 F. Supp. 2d at 852-53. Plaintiffs were the producers of a television show who entered into a contractual relationship with a network akin to a joint venture with profit sharing. *Id.* at 850-51. Plaintiff claimed the defendant network took actions in bad faith to limit plaintiff's share of the profits, despite the show's popular success. *Id.* The court held that the implied covenant claim was not superfluous because "[e]ven if the fact finder concludes that the consensual terms of the contract did not impose such obligations on Defendants, the fact finder could conclude that the actions of Defendants frustrated a benefit of the contract . . . ." *Id.* at 853.

*Celador* exemplifies how "[t]he implied covenant finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *See Ladd v. Warner Bros. Ent.*, 110 Cal. Rptr. 3d 74, 81 (Ct. App. 2010) (internal quotation marks and citation omitted). Where a contract provides such discretion to a party, the party must proceed in good faith. *Id.*; *see also Helmer as Co-Tr. of Headley Grandchildren Irrevocable Tr. v. Transamerica Life Ins. Co.*, No. 17-CV-03129-JSW, 2020 WL 13990861, at *7 (N.D. Cal. May 28, 2020) (allowing a breach of implied covenant claim where the defendant argued against a breach of contract claim by claiming it had "unfettered discretion"); *Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *16 (N.D. Cal. May 13, 2016) (allowing a breach of implied covenant claim where one agreement required defendant make a subjective determination, but not where a separate agreement required an objective determination).

Here, by contrast, the 2022 settlement agreement did not invest defendant with discretionary powers affecting plaintiff's rights under the agreement. Nor have defendant's actions, even if taken in bad faith, frustrated plaintiff's actual benefits under the agreement. At issue here are the forward-looking terms of the agreement[3]: paragraph six, essentially reiterating defendant's obligations under

---

[3] Plaintiff does not allege or argue that defendant has shirked its duties under the backward-looking sections of the settlement agreement, where defendant acknowledged the validity of certain registrations, ceased production of specific products, and paid a lump sum.

1   trademark laws; paragraph eleven, which provides an out-of-court "cure" for violations of paragraph
2   six; and paragraph sixteen, which states that any alleged infringement not resolved through the cure
3   provisions may be resolved in this Court. Dkt. No. 11-3 at 7-11. While the alleged extent of
4   defendant's infringement plausibly "disappoints the reasonable expectations of the other party," the
5   Court cannot say it has "depriv[ed] that party of the benefits of the agreement." *See Careau*, 272
6   Cal. Rptr. at 400. In essence, plaintiff argues that the settlement agreement may have anticipated
7   some future disputes, but not this many. Nonetheless, per the agreement, plaintiff retains the ability
8   to pursue the terms of the cure provision and, if that fails, return to court to vindicate its rights.

Moreover, considering the implied covenant claim as an alternative to an unsuccessful breach of contract claim reveals the former's superfluity. If the breach of contract claim fails here, the breach of implied covenant claim necessarily fails as well.[4]

Plaintiff's complaint alleges that it has been harmed as a result of its "repeated investment of time and resources expended to enforce SHEIN's compliance," Compl. ¶ 72, but a breach of implied covenant claim does not provide a different remedy that breach of contract has not already provided. Accordingly, count two is duplicative of count one and is DISMISSED with prejudice.

### III.  Trade Dress Dilution Claims (Counts 5 and 9)

To prove a claim for trademark dilution under federal or California law, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008); 15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14250. Defendant challenges whether plaintiff's marks are famous. The federal statute provides

---

[4] In *Celador*, by contrast, the court determined that the breach of implied covenant claim could stand independently, even if no express terms of the contract had been breached. 347 F. Supp. 2d at 853. The facts here are also distinguishable from another case cited in plaintiff's opposition, *Trombley Enterprises, LLC v. Sauer, Inc.*, No. 5:17-CV-04568-EJD, 2019 WL 452044, at *5-6 (N.D. Cal. Feb. 5, 2019). There, the breach of implied covenant claim was allowed to proceed based on allegations of misrepresentations by the defendant. *Trombley*, No. 5:17-CV-04568-EJD, 2019 WL 452044, at *6. Plaintiff does not allege any specific misrepresentations here.

8

the following factors for courts to consider as regards to the fame of the mark:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A)(i)-(iv). "The bar for famousness is high, and the Ninth Circuit has routinely found commercially successful marks insufficiently famous to satisfy the standard." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 969 (N.D. Cal. 2019) (citing cases). Some courts have characterized trademark dilution protections as extending only to marks that are a "household name." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (citation omitted).

The complaint asserts that Dr. Martens footwear is "famous worldwide," "widely recognized and extremely popular," and "among the world's greatest and most recognizable brands." FAC ¶¶ 15-16. Since 1960, plaintiff has sold its footwear in numerous countries around the world. *Id.* ¶ 15. Plaintiff alleges it has sold "millions of pairs of shoes, boots, and sandals" in the United States over the past forty years. *Id.* ¶ 16. Further, "Dr. Martens footwear has been featured in movies, in magazines, and in public appearances of countless celebrities" and "has gone viral on social media, featured by numerous influencers." *Id.* The AirWair Classic Trade Dress has been used in the United States since 1984 and the Jadon Trade Dress, which takes elements from the recognizable classic trade dress, has been used since 2013. *Id.* ¶¶ 20-21. In 2021, a jury found the Jadon Trade Dress and three registered trademarks "valid" and "famous."[5] *Id.* ¶ 30; *Airwair Int'l Ltd. v. ITX USA, LLC*, No. 3:19-cv-07641-SI (N.D. Cal.), Dkt. No. 183.

Defendant contends these allegations are insufficient to meet the high bar for fame in a dilution claim. Mot. at 10-15; Dkt. No. 43 ("Reply") at 6-10. Defendant further argues that plaintiff

---

[5] The three trademarks were -751 (combination of a yellow welt stitch and a two-tone grooved sole edge), -689 (sole edge design featuring ribbing and a dark band over a light band), and -692 (the elements of -689 plus welt stitching and a heel tab). *Airwair Int'l Ltd. v. ITX USA, LLC*, No. 3:19-cv-07641-SI (N.D. Cal.), Dkt. No. 183; Compl. ¶ 23.

1  must meet this standard for each individual trade dress or trademark, not Dr. Martens footwear in
2  general. *Id.* Finally, defendant maintains that the complaint contains only conclusory allegations
3  that plaintiff established fame for its marks and trade dress *before* defendant commenced its
4  activities. *Id.* Plaintiff's opposition relies primarily on the liberal pleading standards of Rule 8,
5  arguing that defendant's challenges are appropriate for summary judgment, not a motion to dismiss
6  for failure to state a claim. Opp'n at 11-15.

7  The threshold question is whether fame may be pled at the brand-level as plaintiff attempts
8  here or must be pled on a per-mark basis. Defendant cites to a case from the Central District of
9  California where the court rejected the plaintiff's attempt to "lump together all versions" of its logo
10  to plead fame. *H-D U.S.A., LLC v. Affliction Holdings, LLC*, No. 220CV01642VAPMRWX, 2020
11  WL 5913850, at *5 (C.D. Cal. June 8, 2020). Instead, the court concluded, "in an action alleging
12  dilution of multiple marks, a plaintiff is required to plead facts demonstrating fame of each mark."
13  *Id.*; *see also Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, No. LACV2002416JAKPLAX, 2020
14  WL 12762735, at *8 (C.D. Cal. Nov. 9, 2020) ("However, that the entertainment properties [of the
15  Harry Potter films] themselves are well-known does not mean that every associated mark enjoys a
16  similar level of fame."). On the other hand, a court in this district allowed plaintiff AirWair's
17  dilution claims to proceed in another case absent per-mark allegations of fame, albeit without
18  consideration of whether such precise pleading may be necessary. *Airwair Int'l Ltd. v. Vans, Inc.*,
19  No. 5:12-CV-05060-EJD, 2013 WL 3786309, at *7 (N.D. Cal. July 17, 2013).

20  Given the nature of plaintiff's fourteen separate trade dress and trademarks in this case, the
21  Court agrees that plaintiff must identify with greater specificity which of its trade dress or
22  trademarks are alleged to have achieved "household name" status and how. *See Nissan*, 378 F.3d
23  at 1011. However, plaintiff is correct that it need not *prove* the fame of each mark in its complaint.
24  *See Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, No. LACV2002416JAKPLAX, 2020 WL
25  12762735, at *8; Opp'n at 11. The Court therefore GRANTS defendant's motion for a more definite
26  statement in this regard.

27
28  ///

## IV. Infringement and Unfair Competition Claims (Counts 3, 4, 7, 8)

The FAC lists the fourteen separate trademarks or trade dress that plaintiff asserts that defendant has infringed upon. FAC ¶¶ 19, 22, 23. The FAC also lists the sixty-one allegedly infringing products sold by defendant. FAC ¶¶ 41, 45, 47, Exs. 3, 4, 6. Beyond a few pictures comparing defendant's and plaintiff's products, *id.* ¶ 50, the FAC does not provide a crosswalk between these two lists that suggests which of defendant's products infringe on which of plaintiff's trademarks or trade dress. Defendant argues this omission renders plaintiff's infringement and unfair competition claims too vague to provide defendant fair notice. Mot. at 16-20.

The case law cited by both sides is not exactly on point. Plaintiff points to just one case, where a software company alleged that the defendants infringed on twenty-nine specific trademarks and one copyright in a single sale to the company's investigator, then further alleged that defendants may have infringed upon other trademarks. *Adobe Sys. Inc. v. My Choice Software, LLC*, No. 14-CV-02150-BLF, 2014 WL 6346776, at *2 (N.D. Cal. Nov. 14, 2014). To the extent that the defendants argued some of the twenty-nine trademarks were not implicated in the single sale, the court decided that was a factual question to be resolved later. *Id.* at *3. Further, the court was not bothered by the second, less specific allegation because it did "not render any less definite" the allegations about the sale to the investigator and put defendants on notice about possible discovery topics. *Id.* However, in a similar suit involving the same plaintiff, another court in this district came to a different conclusion about the allegation of possible infringement beyond the single sale. *Adobe Sys. Inc. v. Software Speedy*, No. C-14-2152 EMC, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014). The court there determined the defendant was entitled to know which specific trademarks were at issue from an appendix of more than 1,000 trademarks cited by the plaintiff and approved a Rule 12(e) motion for a more definite statement. *Id.* at *5-6. The court also noted that if the plaintiff would not know the additional infringed trademarks until after discovery, the plaintiff could later amend its complaint to reflect those. *Id.* at *6; *see also One Indus., LLC v. Jim O'Neal Distrib., Inc.*, No. 06CV1133 JAH(AJB), 2007 WL 9734560, at *5 (S.D. Cal. May 29, 2007) (granting a Rule 12(e) motion where it was not clear which of five identified trademarks were alleged to have been infringed).

11

Defendant's other cited cases do not provide much support because they involve situations where the plaintiff did not identify or describe with clarity the trademark or trade dress at issue. *See La Terra Fina USA, LLC v. Reser's Fine Foods, Inc.*, No. 3:23-CV-02631-JSC, 2024 WL 874110, at *2-3 (N.D. Cal. Feb. 29, 2024) (allowing only claims related to identified trademark or trade dress to proceed, not claims related to other unidentified trade dress); *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3-4 (N.D. Cal. May 10, 2010) (dismissing a claim where the plaintiff had not clearly articulated the trade dress at issue); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. C08-04397 WHA, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008) (dismissing a claim where the components of the trade dress were unclear). Here, by contrast, plaintiff lists the specific trademark or trade dress mark registrations and the specific elements of its two unregistered trade dresses. FAC ¶¶ 19, 22, 23.

The Court agrees with plaintiff that the complaint in its current form provides sufficient notice of its infringement claims for defendant to answer. This is not a case like *Software Speedy* where plaintiff has identified 1,000 different trademarks. No. C-14-2152 EMC, 2014 WL 7186682, at *5-6. Defendant can reasonably respond to the allegation that its products have infringed on plaintiff's specifically identified trademarks and trade dress. However, plaintiff should be prepared to identify which of defendant's products it believes infringe upon which of its trademarks, because defendant may properly seek that information during discovery.

In conclusion, the Court DENIES defendant's motion to dismiss or require a more definite statement in regard to plaintiff's infringement claims and unfair competition claims.

## V.     Administrative Motions to File Under Seal

Courts recognize a federal common law right for the public to inspect and copy judicial records and documents. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). Thus, a party seeking to seal a judicial record must overcome "a strong presumption in favor of access" unless it is a record "traditionally kept secret." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The sealing party bears the burden of overcoming this strong presumption by meeting a "compelling reasons" standard, supported by specific facts demonstrating that such need

12

outweighs the general history of access and public policy favoring disclosure.[6] *Id.*

Plaintiff has asked the Court to seal the entirety of the 2022 settlement agreement as an exhibit to the complaint. Dkt. No. 11. Defendant has asked that the portions of its complaint that refer to terms in the settlement agreement be redacted. Dkt. No. 36. Similarly, plaintiff asked for certain redactions in its opposition and again asked that the settlement agreement be filed under seal. Dkt. No. 42.

To support their motions, plaintiff argues that there are compelling reasons to seal because the parties agreed to a confidentiality term[7] and disclosure would prejudice the parties. Dkt. No. 11 at 1, Dkt. No. 42 at 1. Providing more specificity, defendant argues that the settlement agreement contains terms that are "commercially sensitive to the parties" that, if disclosed, "would provide others in the market with information regarding the parties' terms and practices with respect to settling disputes." Dkt. No. 36 at 2. Defendant also asserts that disclosure would deprive the parties of "the benefit of the bargain for confidentiality." *Id.*

The simple fact that the parties agreed to keep the agreement confidential is not a sufficiently compelling reason to keep it under seal when its terms are at issue in this dispute. *See Rumble, Inc. v. Daily Mail and General Trust PLC*, No. CV 19-08420-CJC(EX), 2020 WL 6154061, at *1 (C.D. Cal. Feb. 11, 2020); *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11CV1319 L MDD, 2014 WL 931780, at *2 (S.D. Cal. Mar. 10, 2014); *Doe v. Mt. Diablo Unified Sch. Dist.,* No. 14-CV-02167-

---

[6] Records attached to motions "that are not related, or are only tangentially related, to the merits of the case" do not have this strong presumption of public access and must only meet a "good cause" standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-98 (9th Cir. 2016). Here, the settlement agreement is central to certain claims in this case.

[7] The confidentiality term of the agreement states as follows:

> The Parties agree that the Parties may use this Agreement as evidence in any proceedings to enforce this Agreement. Except as set forth above, the Parties shall not disclose the terms of this Agreement to third parties other than attorneys, accountants, or tax advisors, except as required by lawful subpoena or pursuant to court order requiring such disclosure. A Party served with a Subpoena for the production of this Agreement shall provide prompt notice to the other Party to enable the other Party to timely assert objections or move for a protective order from a court of competent jurisdiction.

Dkt. No. 11-2 ¶ 21.

HSG, 2015 WL 5438951, at *2 (N.D. Cal. Sept. 14, 2015). Nor would disclosure deprive the parties of the benefit of the bargain, since the agreement expressly contemplates disclosure due to court order.

Defendant's argument that the agreement contains "commercially sensitive" information that could be used against them by third parties in future settlement negotiations comes closer to a compelling reason, but still lacks precision when applied to the agreement in its entirety. The Court therefore DENIES the present motions to file the settlement agreement under seal. Instead, the Court directs the parties to meet and confer and jointly propose narrowly tailored redactions to the settlement agreement that protect any truly sensitive information. If the parties can stipulate that certain terms of the agreement are not at issue in this dispute, that would also lessen the public interest in disclosure.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendant's motion. Plaintiff may file an amended complaint with more detailed allegations related to the fame of its trademarks no later than June 6, 2025.

**IT IS SO ORDERED**.

Dated: May 2, 2025

SUSAN ILLSTON
United States District Judge